UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN B. WILSON, LESLIE B. WILSON, and JOHN B. WILSON, JR.,<br><br>Plaintiffs<br><br>v.<br><br>NETFLIX, INC., NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 241C FILMS, LLC, LIBRARY FILMS, LLC, JON KARMEN, and CHRIS SMITH,<br><br>Defendants. | CIVIL ACTION<br>NO. 1:21-cv-10894 |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Netflix, Inc. ("Netflix"), Netflix Worldwide Entertainment, LLC ("NWE"), 241C Library Films, LLC ("241C"), Library Films, LLC ("LF"), Jon Karmen ("Karmen"), and Chris Smith ("Smith") (collectively, "the Defendants") hereby remove the above-captioned case, presently pending in the Superior Court of Essex County, Massachusetts and bearing Civil Action No. 2177CV00388, to the United States District Court for the District of Massachusetts.

Removal is authorized by 28 U.S.C. § 1441 because, but for the misjoined claims asserted by Plaintiff John B. Wilson, Jr. ("Wilson Jr."), there is complete diversity of citizenship between the Plaintiffs and the Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs. In further support of this Notice, Defendants state as follows:

### BACKGROUND

1. On April 6, 2021, Plaintiffs commenced this action in the Superior Court of Essex County, Massachusetts. *See* Exhibits 1 (Complaint), Exhibits 2-8 (Exhibits to Complaint).

2. The complaint alleges one count for defamation against all Defendants arising out of the Netflix documentary *Operation Varsity Blues: The College Admissions Scandal* (the "Film").

3. On April 28, 2021, Defendants accepted service of process through undersigned counsel.

## GROUNDS FOR REMOVAL

4. Section 1441(a) of Title 28 of the United States Code provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5. Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. *See* 28 U.S.C. § 1332.

### A. Diversity Jurisdiction

6. This action may be removed to this Court in accordance with 28 U.S.C. § 1441 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this is an action between citizens of different states (*see* 28 U.S.C. § 1332), excluding Plaintiff Wilson, Jr., who has been misjoined in this action. As a misjoined plaintiff, Wilson Jr.'s citizenship is immaterial to the diversity inquiry, for the reasons stated below.

### i. Diversity of Citizenship and Misjoinder of Plaintiff Wilson, Jr.

7. Plaintiffs John B. Wilson, Sr. ("Wilson Sr.") and Leslie B. Wilson ("Mrs. Wilson") are residents of Lynnfield, Essex County, Massachusetts. *See* Complaint, Ex. 1, ¶¶ 4-5. Accordingly, Wilson Sr. and Mrs. Wilson are citizens of Massachusetts.

8. Defendant Netflix is a Delaware corporation with a principal place of business in California. *Id.* ¶ 7. Accordingly, Netflix is a citizen of Delaware and California. *See* 28 U.S.C. § 1332(c)(1).

9. Defendant NWE is a Delaware limited liability company with a principal place of business in the State of California. Complaint, Ex. 1, ¶ 8. Accordingly, NWE is a citizen of Delaware and California.

10. Defendant 241C is a California limited liability company with a principal place of business in the State of California. *Id.* ¶ 9. Accordingly, 241C is a citizen of California.

11. The Complaint alleges that Defendant LF is a California limited liability company with a principal place of business in the State of California. *Id.* ¶ 10. LF is in fact a limited liability company organized under the laws of Wisconsin.

12. Defendant Karmen is a resident of and therefore a citizen of California. *Id.* ¶ 11.

13. The Complaint alleges that Defendant Smith is a resident of California. *Id.* ¶ 12. He is in fact a resident of Wisconsin and therefore a citizen of Wisconsin.

14. The Complaint alleges that Wilson Jr. is a resident of Los Angeles, California and therefore a citizen of the California. *Id.* ¶ 6.

15. There would be complete diversity of citizenship between the Plaintiffs and all Defendants but for the joinder of Wilson Jr. as a plaintiff. Wilson Jr.'s citizenship is immaterial to the diversity analysis, however, because he has been improperly joined as a plaintiff to defeat diversity jurisdiction. *See Universal Truck & Equip. Co. v. Southworth–Milton, Inc*., 765 F.3d 103, 108 (1st Cir. 2014*)* ("removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant"); *see also Antony v. Duty Free Americas, Inc.*, No. 09-10862-NMG, 2009 WL 10694418 at *2 (D. Mass. Dec. 3, 2009) ("A mere theoretical possibility of recovery under state law does not suffice to preclude removal.") (citing *Badon v. RJR Nabsico, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2005)); *Carey v. Bd. of Governors of Kernwood Country Club,* 337 F. Supp. 2d 339, 343 (D. Mass. 2004) (improper joinder found where plaintiff "failed to state a viable cause of action" against defendants); *Mills v. Allegiance Healthcare Corp*., 178 F. Supp. 2d 1, 4 (D. Mass. 2001)

("linchpin" of analysis is "whether the joinder of the nondiverse party has a reasonable basis in law and fact.").

### ii.   Amount in Controversy

16.   Plaintiffs allege that they have suffered, and continue to suffer, "substantial harm and damages" and claim entitlement to "significant monetary damages." Complaint, Ex. 1, ¶ 46.

17.   The amount in controversy in this action, exclusive of interest and costs, therefore exceeds the sum of $75,000. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

## THE MISJOINDER OF WILSON JR.

18.   Wilson Jr. has no viable claim of defamation against the Defendants for three independent reasons:

(a)   The Film does not contain any defamatory statements that are of and concerning Wilson Jr.;

(b)   The Film is a privileged fair report of court records and proceedings; and

(c)   Wilson Jr.'s claims are (i) governed by California law and (ii) barred by California's anti-SLAPP statute, CAL. CODE OF CIV. PROC. § 425.16.

### A.   United States v. John B. Wilson, Sr.

19.   On March 29, 2019, the United States Attorney's Office announced that "[d]ozens of individuals involved in a nationwide conspiracy that facilitated cheating on college entrance exams and the admission of students to elite universities as purported athletic recruits were arrested by federal agents . . . and charged in federal court in Boston."[1]  Among those arrested was Plaintiff Wilson Sr., who was then charged with conspiracy to commit mail fraud and honest

---

[1] *See Arrests Made in Nationwide College Admissions Scam: Alleged Exam Cheating & Athletic Recruitment Scheme*, U.S. DOJ (Mar. 12, 2019), https://www.justice.gov/usao-ma/pr/arrests-made-nationwide-college-admissions-scam-alleged-exam-cheating-athletic.

services mail fraud." *Id.* (The government later charged Wilson Sr. with eight additional offenses.)

20. In a Memorandum and Order dated November 25, 2020, the United States District Court Judge presiding over Wilson Sr.'s prosecution made the following findings:

> Defendant John Wilson . . . has been charged, alongside 30 other parents, with conspiring with William "Rick" Singer ("Singer") to have his children fraudulently admitted into an elite university by falsifying their athletic credentials and bribing university employees and athletic coaches.
> ***
> In the spring of 2013, Wilson hired Singer to assist his son in his college application process. Wilson's son played high school water polo but was not qualified to play on the varsity water polo team at the University of Southern California ("USC"). Singer, nonetheless, communicated with the water polo coach at USC, Jovan Vavic ("Vavic"), about having Wilson's son accepted to USC as a "bench warmer side door" water polo recruit. Wilson, Singer and Vavic planned specifically to have Wilson's son "recruited" as a walk-on in exchange for a "donation" to USC. In executing that plan, Singer embellished the athletic profile of Wilson's son to include fabricated awards.
>
> Wilson's son was admitted to USC in March, 2014, after which Wilson "donated" approximately $220,000 to USC via Singer's charity, the Key Worldwide Foundation ("KWF"), and his for-profit consulting business, The Key. His son subsequently enrolled in the university and joined the water polo team which he quit after his first semester.
>
> In the fall of 2018, Wilson contacted Singer again, this time inquiring about using the "side door" to improve the college opportunities for his twin daughters. Singer, who was cooperating with law enforcement by that time, explained to Wilson that his daughters could be recruited for the sailing or crew teams at Stanford and Harvard but would not actually have to participate on either team. Wilson subsequently wired multiple payments in the aggregate of $1.5 million to Singer and his "foundation."
> ***
> With respect to Wilson specifically, the affidavit [of FBI Special Agent Laura Smith] asserts that he conspired with Singer 1) to bribe the water polo coach at USC to designate his son as a recruited USC water polo player in order to ensure his son's admission into that school and 2) to bribe university employees at Stanford and Harvard to secure the admission of his daughters as recruited athletes in those schools.[2]

*United States v. John Wilson*, D. Mass. 1:19-cr-10080-NMG, Dkt. # 1649 at 1-4.

---

[2] Wilson Sr.'s daughters are not plaintiffs in this case.

### B.     The Film Has No Defamatory Statements "Of and Concerning" Wilson Jr.

21. In order to be actionable as defamation, a publication must contain a defamatory statement that is "of and concerning" the libel plaintiff. The requirement has constitutional roots. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 288, 292 (1964).

22. The of and concerning requirement contains two components. The first addresses whether the plaintiff was identifiable to the audience. This can be done by showing "either that the defendant intended its words to refer to the plaintiff and that they were so understood, or that the defendant's words reasonably could be interpreted to refer to the plaintiff and that the defendant was negligent in publishing them in such a way that they could be so understood[.]" *Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 430, 231, 583 N.E.2d 228, 231 (1991).

23. The second requirement is that the statement about the plaintiff be defamatory *of* the plaintiff. *See id.* at 433, 583 N.E.2d at 232 ("the context in which the defendants' statement was spoken and received has importance only if the statement itself can be reasonably susceptible of a defamatory meaning as to the [plaintiff]"). *See also Antony*, 2009 WL 10694418 at *2 (elements of libel include "1) a false and defamatory communication 2) concerning the plaintiff").

24. As a general rule, someone "who is not himself libelled cannot recover even though he has been injured by the libel published concerning another.'" *Church of Scientology of Cal. v. Flynn*, 578 F. Supp. 266, 268 (D. Mass. 1984) (quoting *Gilbert Shoe Co. v. Rumpf*, 112 F. Supp. 228, 229 (D. Mass. 1953). Statements defamatory of a husband, for example, are not automatically defamatory of his wife, *Hughes v. New Eng. Newspapers Publ'g Co.*, 312 Mass. 178, 180–81, 43 N.E.2d 657, 659 (1942), and statements defamatory of a mother are not automatically defamatory of her son, *Godbout v. Cousens*, 396 Mass. 254, 263–64, 485 N.E.2d 940, 946 (1985). *See also Eyal,* 411 Mass. at 434, 583 N.E.2d at 232–33 (statement defamatory of sole shareholder of corporation not defamatory of corporation).

25. In this case, it is undisputed that, as the Film reported, Wilson Sr. "has been charged, alongside 30 other parents, with conspiring with William 'Rick' Singer . . . to have his children fraudulently admitted into an elite university by falsifying their athletic credentials and

bribing university employees and athletic coaches." *Wilson*, Dkt. # 1649 at 1 (November 25, 2020 Memorandum and Order).

26. As to Wilson Jr. (referred to as "Johnny" in the Complaint), the Complaint alleges in relevant part:

> *Mr. Wilson is falsely accused of conspiring with Singer to "bribe" his son's way into the University of Southern California ("USC") as a water polo player in 2014.* However, it is undisputed that Johnny Wilson was a star athlete, an invited member of the United States Olympic water polo development program, and that his grades and test scores were more than sufficient to gain admission to USC. He was a starter on multiple highly nationally ranked high school and club teams and was approached by more than one Division I college water polo and swimming teams to possibly join their programs. Johnny's high school coach — himself an NCAA MVP and Olympic team alternate — was openly involved with the Wilson family and was in contact with the USC coaches about Johnny's participation in USC water polo. Unlike most of the children of the other defendant parents in the investigation, Johnny was actually an athlete and ultimately became a member of the USC water polo team. Below is a photo published in the San Jose Mercury News of Johnny Wilson competing in the West Bay Area League swimming championships in 2013, in which he won first place in the butterfly:



- 7 -

Complaint, Ex. 1 at ¶ 22 (emphasis added).

27. The Complaint fails to plausibly allege any defamation claim on the part of Wilson Jr. Rather, Wilson Jr.'s alleged athletic and academic prowess only is relevant Wilson Sr.'s defense is that he had no motive "to 'bribe' his son's way into the University of Southern California . . . as a water polo player in 2014" because Wilson Jr. was a star athlete. *Id. But see Wilson*, *supra*, November 25, 2020 Memorandum and Order, Dkt. 1649 at 2 ("Wilson's son played high school water polo but was not qualified to play on the varsity water polo team at the University of Southern California[.]").

28. Even assuming, however, that Wilson is not guilty of "conspiring with [Singer] to have his children fraudulently admitted into an elite university by falsifying their athletic credentials and bribing university employees and athletic coaches," the Complaint does not plausibly allege that the Film contained any defamatory statements *about Wilson Jr.* Reporting that a father engaged in illegal activity to benefit his son does not, without more, defame the son. *Hughes*, 312 Mass. at 180–81, 43 N.E.2d at 659; *Godbout*, 396 Mass. at 263–64, 485 N.E.2d at 946. *See generally* Ezekiel 18:19-20 ("The son shall not suffer for the iniquity of the father, nor the father suffer for the iniquity of the son.").

29. Because the Complaint does not plausibly allege any defamatory statements "of and concerning" Wilson Jr., and because the Film contains no such statements, removal is proper.

**B. The Film Is a Privileged Fair Report of the Varsity Blues Prosecution**

30. Even assuming that the Film contains defamatory statements of and concerning Wilson Jr., any such statements are protected by the fair reporting privilege, which means he has been improperly joined as a defendant and his citizenship is immaterial to federal jurisdiction.

31. "Massachusetts has long recognized a privilege for fair and accurate reports of official actions and statements." *Howell v. Enterprise Publishing Co.*, 455 Mass. 641, 650, 920 N.E.2d 1, 13 (2010). The fair report privilege "allows those who fairly and accurately report certain types of official or governmental action to be immune from liability for claims arising out of such reports." *ELM Lab., Inc. v. RKO Gen., Inc.*, 403 Mass. 779, 782, 532 N.E. 2d 675, 678

(1989), *abrogated on other grounds by United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 815, 551 N.E.2d 20, 23 (1990).

32. The fair report privilege applies to news reports of official government action and records, including affidavits in support of the issuance of search warrants, arrest warrants, and court records of criminal cases. *See Reilly v. Associated Press,* 59 Mass. App. Ct. 764, 767–77 (2003); *Sibley v. Holyoke Transcript-Telegram Pub. Co.*, 391 Mass. 468, 471, 461 N.E.2d 823, 826 (1984); *Thompson v. Bos. Pub. Co.*, 285 Mass. 344, 348, 189 N.E. 210, 213 (1934); *Thompson v. Globe Newspaper Co.*, 279 Mass. 176, 187, 181 N.E. 249, 253 (1932); *see generally Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975) ("the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection").

33. A fair report "need be neither exhaustive in detail nor perfectly precise in language." *Ricci v. Venture Magazine,* 574 F. Supp. 1564, 1567 (D. Mass. 1983). All that is required is a "rough and ready summary" of the judicial action or record. *Yohe v. Nugent*, 321 F.3d 35, 43 (1st Cir. 2003); *MiGi, Inc. v. Gannett Mass. Broadcasters*, 25 Mass. App. Ct. 394, 396, 519 N.E.2d 283, 285 (1988).

34. "[I]t is not necessary that the [Film] provide an accurate recounting of the events that actually transpired." *Yohe*, 321 F.3d at 44. "That is, 'accuracy' for fair report purposes refers only to the factual correctness of the events reported and not to the truth about the events that actually transpired." *Id.*

35. "Indeed, it is well established that the fair report privilege 'should not be forfeited even if the party making the report knew the statement to be false.'" *Id.* (citing *MiGi*, 25 Mass. App. Ct. at 397, 519 N.E.2d 283; *see also Restatement (Second) of Torts* § 611 cmt. b (1977) ("The [fair report privilege] permits a person to publish a report of an official action or proceeding or of a public meeting that deals with a matter of public concern, even though the report contains what he knows to be a false and defamatory statement.").

36. For fair report purposes, it is irrelevant whether Wilson Sr. is guilty or innocent, or is ultimately convicted or acquitted. His accusation that the *government* manipulated the recordings of his conversations on file with court does not state a claim against the press, which is entitled to rely on the official reports and proceedings issued of government officials. Similarly, whether Wilson Jr. is a "star athlete" or, as stated in the District Court's November 25, 2020 Memorandum and Order, "not qualified to play on the varsity water polo team at the University of Southern California," is immaterial to whether the privilege applies to reports of the charge that Wilson Sr. "conspired to have his children fraudulently admitted into an elite university by falsifying their athletic credentials and bribing university employees and athletic coaches." Complaint, ¶ 22; *Wilson*, *supra*, Dkt. 1649 at 1, 2.

37. Nor is the privilege lost because court records also reflect that Wilson Sr. sought to suppress evidence seized because the government allegedly "[r]elied intentionally or recklessly on false statements in its affidavit, without which the affidavit failed to establish probable cause," *Wilson*, *supra*, Dkt. 1437 at 1, or moved to sever his trial because, unlike with respect to other defendants, his son allegedly "was a genuinely talented water polo player who did, in fact, qualify for the USC water polo team," *id.* Dkt. 1438 at 6, or sought to dismiss charges against him as "factually impossible," *id.* at 9–10. Not only were each of those motions denied by the District Court, *see* Dkt. 1437, Dkt. 1649, but reporting on the contents of the motions would not have altered the undisputed fact that Wilson faced—and still faces—the criminal charges reported in the Film (and other charges, such as tax fraud, that Defendants did not include in the Film). *See Yohe*, 321 F.3d at 44 ("To qualify as 'fair and accurate' for purposes of the fair report privilege, an article reporting an official statement need only give a 'rough-and-ready' summary of the official's report[.]"); *ELM*, 403 Mass. at 783, 532 N.E.2d at 678 ("A statement is considered a fair report 'if its "gist" or "sting" is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced.'").[3]

---

[3] The Defendants were not required to investigate or include matters outside of the official court record, such as Wilson Sr.'s claim that he passed a polygraph examination. *See, e.g.,* Complaint,

38. In all events, any alleged unfairness in Defendants' reporting on the allegations and proceedings against Wilson Sr. would not alter the fact that, as to Wilson Jr., the Film is a privileged fair report.

### C. Wilson Jr.'s Claims Are Barred by California's Anti-SLAPP Statute.

39. Because Wilson Jr. is a resident of California, his libel claims are also barred by California's anti-SLAPP statute, CAL. CODE OF CIV. PROC. § 425.16. *See Green v. Cosby*, 138 F. Supp. 3d 114, 124 (D. Mass. 2015) ("The statements at issue in this case were published nationally, so the court applies the law of the state in which each Plaintiff was domiciled when the alleged publication occurred."); *McKee v. Cosby*, 236 F. Supp. 3d 427, 436 (D. Mass. 427) ("[p]ursuant to section 150 of the *Restatement (Second) of Conflict of Laws*, the law of the state where the defamed person was domiciled at the time of publication applies if the matter complained of was published in that state") (internal quotation marks and citations omitted).

40. Section 425.16 applies to statements (a) "made in connection with an issue under consideration or review by a . . . judicial body"; (b) "made in a place open to the public or a public forum in connection with an issue of public interest"; or (c) "other conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." *Id.* § 425.16 (e).

41. "To determine whether a lawsuit or cause of action should be disposed of as a SLAPP suit, section 425.16 establishes a two-part test. Under the first part, the party bringing the anti-SLAPP motion has the initial burden of showing that the lawsuit, or a cause of action in the lawsuit, arises from an act in furtherance of the right of free speech or petition—*i.e.*, that it arises from a protected activity." *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal. App. 4th 133, 142, 122 Cal. Rptr. 3d 264, 270 (2011). Because the Film concerns a government prosecution on a matter of legitimate public interest, the first part of the test indisputably is met here. *See generally Ojjeh v. Brown*, 43 Cal. App. 5th 1027, 1036, 257 Cal. Rptr. 3d 146, 152 (2019) ("proposed

---

Ex. 1., ¶¶ 3, 37. If the fair report privilege required the press to investigate beyond the official court record, no criminal case could be safely reported.

documentary is akin to news reporting for purposes of the anti-SLAPP law"); *United States v. Kott*, 380 F. Supp. 2d 1122, 1124 (C.D. Cal. 2004) (public interest in criminal records and proceedings), *aff'd*, 135 F. App'x 69 (9th Cir. 2005).

42. "Once the defendant has met its burden, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the lawsuit or on the cause of action." *Tamkin*, 193 Cal. App. 4th at 142, 122 Cal. Rptr. 3d at 270–71. To satisfy this burden, a plaintiff must present a "showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Navellier v. Sletten* 29 Cal. 4th 82, 93, 52 P.3d 703 (2002).

43. Here, Wilson Jr. cannot demonstrate a probability of prevailing on his claim because the Film contains no defamatory statements of and concerning him and is a privileged fair report of judicial proceedings and records. For this reason too, Wilson Jr. is a misjoined plaintiff whose status does not deprive the Court of diversity jurisdiction.

## **ALL OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

44. Venue is proper in this Court—for purposes of removal—under 28 U.S.C. § 1441(a) because the United States District Court for the District of Massachusetts is the federal judicial district and division embracing the Superior Court of Essex County, where Plaintiffs originally filed this action.

45. All Defendants join in and consent to this Notice of Removal.

46. By filing this Notice of Removal, Defendants do not waive any arguments, defenses, or rights, all of which are hereby specifically reserved, including, without limitation, all arguments, defenses, and rights related to lack of personal jurisdiction.

47. In accordance with 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given to Plaintiff, and Defendants will file a copy of the Notice of Removal in the State Court Action.

48. Defendants respectfully reserve the right to submit additional argument or evidence if Plaintiffs challenge this Notice of Removal.

- 12 -

DB1/ 121542602.9

49. Defendants are contemporaneously filing a Notice of Filing of Notice of Removal with the Superior Court of Essex County, attached hereto as Exhibit 9.

50. Pursuant to Local Rule 81.1(a), within 28 days of the filing of this Notice of Removal, certified or attested copies of all records and proceedings in the Superior Court and a certified or attested copy of all docket entries in the same shall be filed with the clerk of this court.

## CONCLUSION

For the reasons stated above, in accordance with 28 U.S.C. § 1441(a) and in conformity with the requirements set forth in 28 U.S.C. § 1446, Defendants hereby remove this action to the United States District Court for the District of Massachusetts, and this Court has jurisdiction over further proceedings. Defendants further notify all parties that this action has been removed and that no further proceedings in this case will be had in the Superior Court for Suffolk County, Massachusetts.

Respectfully submitted,

**NETFLIX, INC., NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 241C FILMS, LLC, LIBRARY FILMS, LLC, JON KARMEN, and CHRIS SMITH**

By their attorneys,

*/s/ Emma D. Hall*
Jonathan M. Albano
BBO #013850
jonathan.albano@morganlewis.com
Emma Diamond Hall
BBO #687947
emma.hall@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA  02110-1726
+1.617.341.7700

Dated:  May 28, 2021

## CERTIFICATE OF SERVICE

I, Emma D. Hall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 28, 2021 and counsel of record to the Plaintiffs:

Howard M. Cooper
Todd & Weld
One Federal Street, 27th Floor
Boston, MA 02110

                                             */s/ Emma D. Hall*
                                              Emma D. Hall